NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

FRANCISCO ESPADA, *Appellant*.

No. 1 CA-CR 22-0601
FILED 11-21-2023

Appeal from the Superior Court in Maricopa County
No. CR2021-116801-001
The Honorable Joseph Shayne Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the court, in which Judge Jennifer M. Perkins and Judge Daniel J. Kiley joined.

---

**H O W E**, Judge:

¶1 Francisco Espada appeals from his convictions of theft of a means of transportation and endangerment, arguing that the trial court improperly denied his motion to substitute counsel. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In May 2021, the State charged Espada with stealing a Slurry Seal work truck and endangering its driver, who clung to the outside of the vehicle while Espada swerved across lanes and sped down the road. Espada was released on bail and, upon a finding of indigency, the trial court appointed counsel.

¶3 Almost a year later, the State filed an allegation that Espada had prior convictions that enhanced the sentencing ranges for the charged offenses, *see* A.R.S. § 13–703, and then extended a plea offer that reflected the enhanced sentencing ranges. However, due to labeling inconsistencies in Espada's federal criminal record, the prosecution erroneously believed Espada to have four, rather than three, prior felony convictions. Upon realizing the mistake, the prosecution tendered Espada a revised plea offer, reducing the possible prison terms from 3.25–6.5 years to 2–3.5 years.

¶4 After this change in the plea offer, Espada orally moved for change of counsel. In explaining his request, he noted that the original plea offer was based on the State's misunderstanding of his criminal history and stated that he sought "a second opinion" of the revised plea offer to "make sure there's no other mistakes or anything." While Espada's counsel did not take a position on the request, the court voiced concerns. The court explained that the State, not defense counsel, controlled plea offers and stated that Espada was offered "a significantly better and very favorable plea," obtained "through the efforts of [his] attorney." Espada responded: "Well, then I guess I'll—guess we'll just go to trial. I'll proceed to trial with this attorney."

¶5        The court closed the matter by ruling on Espada's motion: "So at this point in time, I do understand you are requesting a new attorney. The Court is going to deny that. The Court does not find that you have shown that she is ineffective or that there's irreconcilable conflict." "Okay," responded Espada. Upon Espada's decision to go to trial, the State withdrew its plea offer.

¶6        A jury ultimately found Espada guilty of stealing the vehicle, a class two felony, and endangering its driver, a misdemeanor. Espada's felony conviction resulted in a nine-year prison sentence; the misdemeanor conviction resulted in a concurrent six-month sentence. Espada timely appealed and we have jurisdiction. Ariz. Const. art. II, § 24; A.R.S. § 13–4033(A).

## DISCUSSION

¶7        Espada asserts that the trial court violated his Sixth Amendment right to adequate representation by improperly denying his motion to substitute counsel. The State counters: (1) Espada functionally withdrew his motion when he stated that he would "proceed . . . with this attorney[,]" and (2) even had he not withdrawn it, the court adequately considered the motion in its ruling. While Espada's remark indicates possible willingness to withdraw the motion, because the trial court ultimately ruled on the motion, we consider the merits of that ruling.

¶8        "A trial court's decision to deny the request for new counsel will not be disturbed absent an abuse of discretion." *State v. Cromwell*, 211 Ariz. 181, 186 ¶ 27 (2005). "An abuse of discretion occurs when the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Riley*, 248 Ariz. 154, 167 ¶ 7 (2020). Both the United States and Arizona Constitutions guarantee criminal defendants the right to representation by counsel. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24; A.R.S. § 13–114. This right is to competent counsel, *State v. LaGrand*, 152 Ariz. 483, 486 (1987), but not to any particular counsel, nor to a meaningful relationship with the attorney, *Cromwell*, 211 Ariz. at 186 ¶ 28.

¶9        To protect this constitutional right, the trial court "has the duty to inquire as to the basis of a defendant's request for substitution of counsel." *State v. Torres*, 208 Ariz. 340, 343 ¶ 7 (2004). The nature of this inquiry depends on the nature of the defendant's request. *Id.* at 343 ¶ 8. General complaints about strategic differences may not require a formal hearing or evidentiary proceeding; however, "sufficiently specific, factually

based allegations" necessitate a hearing into the request for substitute counsel. *Id.* (quoting *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)); *State v. Goudeau*, 239 Ariz. 421, 447 ¶ 78 (2016). If the defendant's allegations are specific, "the trial court should elicit specific on-the-record responses to the allegations from defense counsel." *State v. Hernandez*, 232 Ariz. 313, 320 ¶ 31 (2013).

¶10 Thus, the trial court inquires first into whether "an irreconcilable conflict or a completely fractured relationship between counsel and the accused" exists. *Cromwell*, 211 Ariz. at 186 ¶ 29. Such conflicts, unlike mere disagreements or tensions, typically necessitate the appointment of new counsel. *Id.* When a defendant moves to substitute counsel, and the conflict is less than irreconcilable, the court considers the *LaGrand* factors: (1) "whether new counsel would be confronted with the same conflict"; (2) "the timing of the motion"; (3) "inconvenience to witnesses"; (4) "the time period already elapsed between the alleged offense and trial"; (5) "the proclivity of the defendant to change counsel"; and (6) the "quality of counsel." *LaGrand*, 152 Ariz. at 486–87; *Riley*, 248 Ariz. at 169 ¶ 19 (quoting *Cromwell*, 211 Ariz. at 187 ¶ 31).

¶11 While Espada now asserts on appeal that he had an "irreconcilable conflict" with counsel and that he had low-quality representation, Espada made no such assertion to the trial court. Although Espada stated vaguely that he wanted "a second opinion" and he and his attorney did not "see eye to eye," such vague assertions do not entitle him to new counsel. *State v. Champagne*, 247 Ariz. 116, 129 ¶ 15 (2019) ("[A] mere allegation of lost confidence in counsel does not require appointing substitute counsel." (citation omitted)). Espada's dissatisfaction was not so great as to prevent him from agreeing to proceed to trial with his attorney. Because the record shows that Espada alleged neither an irreconcilable conflict nor a total breakdown of the relationship, we must examine whether the court abused its discretion as to the other factors—noting, however, that failure to consider individually each *LaGrand* factor on-record is not an inherent abuse of discretion. *See Riley*, 248 Ariz. at 169 ¶ 21.

¶12 From the record, the court considered two things: the conflict's nature and the counsel's competence. Taking into account Espada's statement that he and his attorney did not "see eye to eye," the court nonetheless found Espada had not shown that the conflict was irreconcilable or that Espada's counsel was ineffective. The record supports the court's findings. These findings were sound. A conflict requires far more contention than exists here to render it irreconcilable. *See, e.g., id.* at

167, 169 ¶¶ 9–10, 18 (finding conflict not irreconcilable where counsel was frequently unreachable, failed to show up at scheduled meetings, and client had "no trust at all" in counsel); *Goudeau*, 239 Ariz. at 447, 448 ¶¶ 73, 85 (finding conflict not irreconcilable despite client allegedly having "serious issues" with and "absolutely no faith" in counsel).

**¶13**　　　　Espada's conflict with his attorney was over a single issue—the discrepancy between the State's initial and revised plea offers. However, "[a] single allegation of lost confidence in counsel does not require the appointment of new counsel." *Cromwell*, 211 Ariz. at 186 ¶ 29; *Riley*, 248 Ariz. at 169–170 ¶ 22. The court did not abuse its discretion nor violate Espada's rights in declining his request for new counsel.

## CONCLUSION

**¶14**　　　　For the foregoing reasons, we affirm.

